## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

————————————————————————————————————————————————

KERMIT J. ERICKSON,

        Plaintiff,

v.                       **MEMORANDUM OF LAW & ORDER**
                            Civil File No. 05-427 (MJD/SRN)

MICHAEL D. JOHNSON and
BALOGH, BECKER, LTD.,

        Defendants.

————————————————————————————————————————————————

Allen H. Gibas, Gibas Law Office, Counsel for Plaintiff.

Kelly Ann Putney and Michael A. Klutho, Bassford Remele, Counsel for
Defendants.

————————————————————————————————————————————————

## I.    INTRODUCTION

This matter is before the Court on cross-motions for summary judgment.

[Docket Nos. 9, 17]  Plaintiff moves for summary judgment on the issue of liability

only.  The Court heard oral argument on December 15, 2005.

## II.    FACTUAL BACKGROUND

### A.    Citibank Account

On September 6, 2001, a credit card account was opened over the

telephone with Citibank.  (Although Citibank owned the account, the card was

issued in AT&T's name.)  The primary account holder was listed as Plaintiff Kermit

Erickson, and his wife, Betty Erickson, was listed as an authorized user.  Because

the account was opened over the telephone, no signed credit card application

exists.

According to the undisputed evidence in the record, Kermit Erickson did

not apply for a credit card account with Citibank.  He never received a credit

cardholder agreement from Citibank.  Nor did he sign such an agreement.  Kermit

Erickson never received a credit card from Citibank.  He never activated the AT&T

credit card.  He also never entered into a credit card transaction with the AT&T

credit card.  Kermit Erickson never made any payment on the AT&T credit card

account.  He theorizes that his then wife, Betty Erickson, opened the account in

his name.  (Kermit and Betty Erickson divorced on March 12, 2004.)

Kermit Erickson avers that he had no knowledge of the account until

October 2003.  Betty Erickson disputes opening the AT&T account without her

husband's knowledge.  However, she testified that the "details are fuzzy" on how

her husband knew about the AT&T account.  She did not testify that Kermit

Erickson took any action to manifest assent to the account.

Kermit Erickson moved out of the family home in March 2003.  He filled out

a postal change-of-address form in approximately May 2003, when he moved into

a new apartment.  At some point in 2003, Betty Erickson ceased making payment

on the AT&T account.

On approximately October 28, 2003, Kermit Erickson received a credit card statement from AT&T dated September 19 through October 21, 2003, listing his name and his previous home as the billing address.  On November 17, 2003, Kermit Erickson's attorney, Allen Gibas, sent a letter to AT&T stating that his client was "unaware of having signed any document agreeing to be responsible for the charges incurred" and requesting "proof that Mr. Erickson has any connection with this account whatsoever."  AT&T did not respond to Gibas's letter.

On approximately January 7, 2004, Kermit Erickson received another credit card statement from AT&T.  Gibas forwarded the statement to Betty Erickson's attorney for payment.  In the Ericksons' divorce decree, Betty Erickson was ordered to pay the AT&T account and to hold Kermit Erickson "harmless from paying" the debt.

During the spring of 2004, at least two debt collection agencies attempted to collect the AT&T debt from Kermit Erickson.  Each ceased collection efforts after Gibas sent a letter requesting verification of the debt.

### B.     Defendants' Collection Action

In August 2004, Citibank hired Defendant Balogh Becker law firm to commence a collection action against Kermit Erickson for the AT&T account. Defendant Michael Johnson is an attorney with Balogh Becker.

Balogh Becker served Erickson with a Minnesota state Summons and Complaint on September 9, 2004, seeking $7,036.44 as the outstanding balance on the credit card and $950.00 in attorney fees. The Complaint included a notice that it was an attempt to collect a debt and that Erickson could contact Balogh Becker within thirty days and request verification of that debt.

On September 15, 2004, Gibas sent a letter to Johnson, which stated:

> Pursuant to the Fair Debt Collection Practices Act, I hereby demand that you furnish proof that Kermit J. Erickson applied for this account with Citibank, and that he executed a document agreeing to pay charges with respect to it.

The letter explained that "Mr. Erickson's former wife likely opened this account without his knowledge or consent and without him accepting liability with respect to the account."

After Johnson received the request for verification, he noted that Gibas was appearing on behalf of Erickson in the matter, notified Citibank of the letter, and put a code on Erickson's file notifying Citibank that a dispute had been received and informing Citibank to provide account statements. On October 29, 2004, Johnson confirmed with Citibank that the AT&T account had been opened over the telephone on September 6, 2001, and, therefore, there was no signed credit card application. Citibank records indicated that Kermit Erickson was the primary account holder, while Betty Erickson was an authorized account user.

On November 20, 2004, Johnson sent Erickson's attorney a letter enclosing

4

discovery requests, copies of the account statements listing Kermit Erickson as the account holder, and copies of checks on Kermit and Betty Erickson's joint account, signed by Betty Erickson, that had been submitted for payment on the account. The most recent account statement with an address, and thus the last statement that appears to have been sent to Kermit Erickson, closed on February 18, 2004, and showed an account balance of $6,257.79. The last account statement included with the verification letter closed on September 20, 2004, and showed a balance of $7,036.44. This account statement showed an attorney code in place of Kermit Erickson's address.

In February 2005, Kermit Erickson filed a motion to strike Citibank's pleadings "as sham and false for failure to comply with Minn. R. Civ. P. 11.02(c)" and, alternatively, for a protective order preventing discovery by Citibank until it produced evidence that Kermit Erickson "signed an agreement to open the account referred to in the Complaint." He requested that Citibank's pleadings be stricken if it failed to produce such evidence. The motion was based on Citibank's inadequate verification under the Fair Debt Collection Practices Act ("FDCPA") that Kermit Erickson was liable for the debt and on its unsupported allegation of account stated.

On March 15, 2005, after a hearing on the issue, the state court denied Kermit Erickson's motion and awarded $600 in costs to Citibank for defending

against the motion.

Sometime after May 17, 2005, Kermit Erickson served a Third-Party Complaint against Betty Erickson in the state litigation. Citibank and Betty Erickson settled the collection action by August 1, 2005. On Citibank's request and against Kermit Erickson's protest, the state court dismissed the entire case with prejudice. The state court case is currently on appeal.

**C.    Current Lawsuit**

In February 2005, Plaintiff served a state court Complaint against Defendants alleging that they had violated the FDCPA. Plaintiff then served an Amended Complaint alleging further FDCPA violations. On February 25, 2005, Defendants removed the case to this Court based on federal question jurisdiction. On August 2, 2005, Defendants waived the bona fide error defense. Both parties now move for summary judgment on all counts on the issue of liability.

**III.   DISCUSSION**

**A.    Summary Judgment Standard**

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of

material fact.  <u>Celotex</u>, 477 U.S. at 323.  Summary judgment is only appropriate

when "there is no dispute of fact and where there exists only one conclusion."

<u>Crawford v. Runyon</u>, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

**B.   Preliminary Issues**

**1.   Standard for FDCPA Violations**

**a.   Unsophisticated Consumer**

The Eighth Circuit follows the "unsophisticated consumer standard" when

determining the reasonableness of collection actions.  <u>Duffy v. Landberg</u>, 215 F.3d

871, 874 (8th Cir. 2000).  The standard is

> designed to protect consumers of below average sophistication or
> intelligence without having the standard tied to the very last rung on
> the sophistication ladder.  This standard protects the uninformed or
> naive consumer, yet also contains an objective element of
> reasonableness to protect debt collectors from liability for peculiar
> interpretations of collections letters.

<u>Id.</u> at 874-75 (citations omitted).

**b.   Intent Requirement**

The FDCPA is a strict liability statute.  <u>Picht v. John R. Hawks, Ltd.</u>, 236

F.3d 446, 451 (8th Cir. 2001).  The statute's bona fide error defense provides an

exception to strict liability.  <u>Id.</u>; 15 U.S.C. § 1692k(c).  However, Defendants have

expressly waived that defense in this case.  Thus, they are strictly liable for

attempting to collect an incorrect debt, regardless of their knowledge of the

accuracy of that debt.

Defendants' reliance on <u>Schmitt v. FMA Alliance</u>, 398 F.3d 995 (8th Cir. 2005), is inapposite.  In <u>Schmitt</u>, the Eighth Circuit held that a creditor's knowledge that the consumer is represented by counsel is not imputed to the debt collector under the FDCPA.  <u>Id.</u> at 997-98.  <u>Schmitt</u> addressed a section of the FDCPA that prohibits debt collectors from communicating with the debtor if "if the debt collector **knows** the consumer is represented by an attorney with respect to such debt."  15 U.S.C. § 1692c(a)(2) (emphasis added).  Unlike the provisions at issue in this lawsuit, the provision in <u>Schmitt</u> expressly required that the debt collector have knowledge of a particular fact before liability was imposed.

### 2.    Applicability of Collateral Estoppel

Defendants claim that the Minnesota district court's denial of Kermit Erickson's motion to strike the pleadings in the underlying state court collection action precludes his claims in this case.  "Collateral estoppel bars the relitigation of factual or legal issues that were determined in a prior . . . court action, and applies to bar relitigation in federal court of issues previously determined."  <u>Banks v. Int'l Union Elec., Elec., Technical, Salaried & Machine Workers</u>, 390 F.3d 1049, 1054 (8th Cir. 2004) (citation omitted).

> Collateral estoppel is available where: (1) the issues are identical to those in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party in the previous action; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issues.

8

Minneapolis Cmty. Dev. Agency v. Buchanan, 268 F.3d 562, 566 (8th Cir. 2001) (citations omitted).

Collateral estoppel does not apply in this case because Defendants cannot meet the first or second prongs of the test.  Although Kermit Erickson did allege the same acts in his motion to strike as he now alleges in this action, the standard the state court employed to determine whether the pleadings should be stricken is not the same as the standard this Court applies under the FDCPA.  The state court's refusal to strike pleadings, before discovery, on the grounds that they were filed in bad faith or that they violated the FDCPA is not preclusive in this case. The state court made no findings regarding whether Defendants violated the FDCPA.  It merely held that, under Minnesota law, the pleadings were permitted to stand.  Also, there is no final judgment on the merits: the parties represent that the state court decision is currently on appeal.

### 3.    Plaintiff's Liability for the AT&T Account

Generally, "[a]n action under the FDCPA is not contingent upon the validity of the underlying debt."  Webb v. MBNA Am. Bank, No. 1:04CV00107GH, 2005 WL 2648019, at *2 (E.D. Ark. Oct. 13, 2005) (unpublished) (citing McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir. 1992)).  In this case, however, the Court must determine Plaintiff's liability for the AT&T credit card in order to resolve his FDCPA claims that Defendants illegally added charges to the debt or falsely

9

characterized the debt as one owed by Plaintiff.  Plaintiff's liability for the AT&T credit card debt was the subject of the state court Complaint; however, the parties have not presented the Court with any final state court judgment deciding the issue.

Citibank's state Complaint asserted that Kermit Erickson was liable under the account-stated doctrine.  This doctrine provides an exception to the general contract requirement that a party will only be liable for a particular amount of money if he gives a promise to pay that amount.  Am. Druggists Ins. v. Thompson Lumber Co., 349 N.W.2d 569, 573 (Minn. Ct. App. 1984).  "An account stated is a manifestation of assent by a debtor and creditor to a stated sum as an accurate computation of an amount due the creditor.  A party's retention without objection for an unreasonably long time of a statement of account rendered by the other party is a manifestation of assent."  Id.

"Existence of an account stated requires mutual examination of the claims of each other by the parties and a mutual agreement between them, as to the correctness of the allowance and disallowance of the respective claims, and of the balance."  Roehrdanz v. Schlink, 368 N.W.2d 409, 412 (Minn. Ct. App. 1985) (citation omitted).  When the debtor has no knowledge of the terms of the account or the account itself, mutuality is missing and the account-stated doctrine cannot apply.  The evidence in this case merely establishes that Betty Erickson

opened the account, used the credit card, made payments on the credit card, and received the bills without complaint. Because Defendants have not presented evidence that Plaintiff assented to the account, the account-stated doctrine does not establish liability.

A recent unpublished opinion from the Minnesota Court of Appeals is illustrative. In Nelson v. First National Bank Omaha, the court addressed a situation almost identical to the one currently before this Court. No. A04-579, 2004 WL 2711032 (Minn. Ct. App. Nov. 30, 2004) (unpublished). In Nelson, joint credit card accounts were opened in the names of the plaintiff and his wife. Id. at *1. The account statements were mailed to their joint address for over ten years. Payments on the account were made by checks signed by the plaintiff's wife, drawn on their joint account. Id. However, the credit card issuer could not produce a card member agreement signed by the plaintiff and there was no evidence that the plaintiff had signed any checks payable to the issuer or any charge slips. Id. at *3. The plaintiff swore that he had no knowledge of the accounts, had not applied for or accepted the credit cards, and had not agreed to pay any amount. Id.

The appellate court held that under those circumstances, the doctrine of account stated did not establish the plaintiff's liability for the debt. It reasoned, "Merely transmitting an account to a debtor does not establish an account stated.

11

Accordingly, when the putative debtor was not aware of the account when the debt was incurred, the doctrine of account stated does not supply a legal basis for liability because the requisite element of mutual assent is lacking." Id. at *2 (citing Roehrdanz v. Schlink, 368 N.W.2d 409, 412-13 (Minn. App. Ct. 1985)).

As in Nelson, there is simply no evidence that Kermit Erickson manifested assent to the account. Thus, Kermit Erickson is not liable for the AT&T account or bound by the cardholder agreement.

Because Plaintiff was not liable for the AT&T account, he was not responsible for the attorney fees incurred by Citibank in the collection action. Defendants' claim for attorney fees was based solely on a provision in the AT&T credit card agreement. The agreement states that it is binding upon the cardholder unless he cancels the account within thirty days of receiving the card and has not used or authorized use of the account. Because there is no evidence that Kermit Erickson ever received the credit card or used or authorized use of the account, the cardholder agreement is not binding upon him.

**C.    Count I: Defendants' Verification of the Debt (§ 1692g(b))**

**1.    Introduction and Statutory Language**

Plaintiff asserts claims that Johnson's November 20, 2004, letter, responding to his request for verification, did not comply with the FDCPA verification requirements. The FDCPA requires:

> If the consumer notifies the debt collector in writing within the
> thirty-day period . . . that the debt, or any portion thereof, is
> disputed, . . . the debt collector shall cease collection of the debt, or
> any disputed portion thereof, until the debt collector obtains
> verification of the debt or a copy of a judgment . . . and a copy of
> such verification or judgment . . . is mailed to the consumer by the
> debt collector.

15 U.S.C. § 1692g(b).

In response to Plaintiff's request for verification, Defendants provided copies of the account statements listing Kermit Erickson as the account holder and copies of checks on Kermit and Betty Erickson's joint account, signed by Betty Erickson, that had been submitted for payment on the account. Plaintiff asserts that Defendants were required to provide some evidence that Plaintiff assented to the account, such as a signed credit card application, a signed cardholder agreement, evidence that he used the credit card to make purchases, or evidence that he made payments on the account.

### 2.   Verification of Plaintiff's Liability for the AT&T Credit Card

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 318-19 (8th Cir. 2004) (quoting 15 U.S.C. § 1692(e)). The FDCPA's verification requirement is intended

13

to "eliminate the . . . problem of debt collectors dunning the wrong person or attempting to collect debts the consumer has already paid." Chaudhry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999) (quoting S. Rep. No. 95-382, at 4 (1977)).  The verification requirement is intended

> to permit the consumer to dispute the debt, including the assertion of any specific facts or circumstances that the consumer considers relevant to such a dispute.  By the same token, this gives the collector and/or creditor the opportunity to address the specific basis for the dispute, either by verifying the debt with information specific to the dispute or by modifying the indebtedness, as circumstances dictate.

Letter from Christopher W. Keller to Kerin Lyn Kaminski (Sept. 19, 1985) FTC Informal Staff Letter.  When the consumer asserts a case of mistaken identity, the debt collector should provide the consumer with evidence tending to show that the debt belongs to the consumer, such as "a copy of the note (and mortgage deed if applicable) and a statement of the unpaid principal, interest, and any other charges."  Letter from Jean Noonan to Timothy W. Bingham (Jan. 12, 1987) FTC Informal Staff  Letter.

At a minimum, the debt collector must contact the creditor and verify the nature, status, and balance of the debt and then convey that information to the consumer.  Mahon v. Credit Bureau of Placer County Inc., 171 F.3d 1197, 1203 (9th Cir. 1999).  Unlike the Fair Credit Reporting Act ("FCRA"), which requires the creditor to "conduct an investigation" upon notification of the consumer's dispute of the debt, 15 U.S.C. § 1681s-2(b)(1), the FDCPA only requires that a

debt collector "obtain[] verification of the debt."

In response to Kermit Erickson's request for verification, Defendants confirmed the debt with the creditor and provided Erickson with multiple account statements which identified him as the account holder and set forth the exact amount of the debt. They also provided copies of checks from Kermit Erickson's checking account used to pay the AT&T account. Under the circumstances of the telephonically created AT&T account, these actions are the equivalent of providing a note or mortgage deed and a statement of unpaid principle and interest as suggested by the FTC. Verification does not require that the debt collector ascertain the legality of the underlying credit agreement.

As the Court has already decided, Citibank and Defendants had insufficient evidence to succeed on a claim that Plaintiff was liable for the AT&T account under the account-stated doctrine. However, proper verification does not require the debt collector to provide evidence to the consumer that is sufficient to conclusively establish liability for the debt in a court action. Defendants' verification was minimally sufficient to comply with the FDCPA.

### 3.    Verification of Amount of Credit Card Debt

Kermit Erickson also asserts that the purported verification was legally insufficient because it only contained a copy of a statement previously mailed to him listing $6,257.79 in debt, while the Complaint sought $7,036.44. The last

statement that was sent to Erickson's address only recites the lower debt amount.
However, Citibank ceased sending the account statements to Erickson after it put
the attorney code on his statements.  The verification letter contains a number of
statements generated after the $6,257.79 statement that were apparently not sent
to Erickson, but that contain progressively higher debt amounts due to interest
charges.  The final statement included in the verification letter contains the
$7,036.44 figure.  Inclusion of this unmailed statement was sufficient to verify the
amount of credit card debt claimed.

### 4.    Verification of Attorney Fees

Plaintiff further argues that Defendants violated their verification duties by
failing to provide him with the basis for their claim for attorney fees, such as a
signed credit card agreement.  Kermit Erickson requested verification that he was
liable for the credit card account.  He did not request verification related to the
amount of or liability for the attorney fees.  Because Plaintiff did not request
verification related to the attorney fees, Defendants did not violate the FDCPA by
failing to provide information relating to those fees.

### 5.    Conclusion

Because Defendants complied with the letter of the FDCPA, the Court
grants summary judgment for Defendants on Count I.  However, the Court is
gravely disappointed by the actions of Defendants and the creditor.  Defendants

did the bare minimum to comply with the FDCPA's verification requirements. Had they investigated Kermit Erickson's identity theft allegations further before continuing with the state court lawsuit, they could have saved considerable time and effort by the parties and the state and federal court systems.

The Court is particularly concerned by the actions of Citibank.  In an age of rampant identity theft[1], it is irresponsible to allow consumers to open credit cards over the telephone, without ever requiring written verification of that consumer's identity.  Citibank did not even bother to save the specific intake information that it collected over the telephone when this account was opened.  These sloppy business practices facilitate identity theft.  Citibank's lax record keeping permits a thief to easily accumulate thousands of dollars of debt in the name of an innocent consumer once the thief has acquired the consumer's social security number.  At no time is the consumer given the opportunity to confirm that he or she ever agreed to be liable for the debt.  Although the FDCPA does not punish Defendants for continuing to attempt to collect this debt when their proof of verification was weak, the Court admonishes Defendants and their clients that both good business practices and good citizenship require them to do their part to prevent identity

---

[1]In 2003, the Federal Trade Commission reported that over twenty-seven million Americans were victims of identity theft in the preceding five years. Federal Trade Commission, FTC Releases Survey of Identity Theft in U.S.: 27.3 Million Victims in Past 5 Years, Billions in Losses for Businesses and Consumers, http://www.ftc.gov/opa/2003/09/idtheft.htm (Sept. 3, 2003).

theft.

**D.    Counts II and IV: Misleading or False Means in Connection with Collection of a Debt (§ 1692e)**

**1.    Introduction and Standard**

Plaintiff claims that Defendants violated section 1692e of the FDCPA by 1) sending collection documents that falsely stated that he owed money that he did not; 2) responding to his request for verification by supplying account statements from AT&T instead of from Citibank and failing to explain the relationship between Citibank and AT&T; and 3) failing to provide Erickson with a credit application, credit card agreement, charge slip executed by him, or a copy of payment made on the account by him when responding to his verification request. The Court has already determined that Defendants were not required to provide Erickson with the documentation he desires in their verification letter.  It now analyzes Plaintiff's remaining allegations.

The FDCPA provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

* * *

(2) The false representation of–

(A) the character, amount, or legal status of any debt;

18

\* \* \*

>    (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

### 2.  Defendants' Claim for Debt Erickson Did Not Owe

Because Kermit Erickson did not manifest assent to the account, he did not owe Citibank any unpaid credit card charges or attorney fees.  By attempting to collect the AT&T credit card debt and attorney fees provided for under the AT&T cardholder agreement, Defendants misrepresented the character, amount or legal status of the debt by claiming he owed a debt he did not.  This action violated section 1692e(2)(A).  See, e.g., Berndt v. Fairfield Resorts, Inc., 337 F. Supp. 2d 1120, 1131 (W.D. Wis. 2004) (holding that section 1692e(2)(A) is violated when the debt collector unintentionally misrepresents the amount of debt owed, by, for example, sending dunning letters to consumers who did not owe any debt), rev'd on other grounds on reconsideration by, 339 F. Supp. 2d 1064 (W.D. Wis. 2004); Grassley v. Debt Collectors, Civil No. 91-221-MA, 1992 U.S. Dist. LEXIS 22782, at *16-*17 (D. Or. Dec. 14, 1992) (unpublished) (holding that debt collector violated section 1692e(2)(A) by falsely informing consumer that she was liable for her husband's debt incurred before their marriage).  Plaintiff is entitled to summary judgment on Count IV.

### 3.    Relationship Between AT&T and Citibank

In Defendants' verification response, they provided credit card account statements with AT&T's name, but did not explain how those account statements related to the original Complaint alleging a debt owed to Citibank. The unsophisticated consumer would have no way to connect the lawsuit on behalf of Citibank with the verification documentation that referenced only AT&T. This confusion could have easily been remedied with a sentence in the verification letter explaining that Citibank owned the account but issued the credit card in AT&T's name. Defendants' verification letter was confusing to an unsophisticated consumer and thus constituted a deceptive means to attempt to collect a debt. The Court grants summary judgment for Plaintiff on Count II.

### E.    Count III: Illegal Charge (§ 1692f(1))

Plaintiff asserts that Defendants violated the FDCPA by illegally adding a charge to the balance of the debt that was not authorized by law or contract by assessing Erickson attorney fees. The FDCPA provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

20

15 U.S.C. § 1692f.

Kermit Erickson did not expressly agree to the imposition of attorney fees in collection actions and there is no statutory or regulatory authority for the award of attorney fees in the underlying state court action.  If Plaintiff had been a party to the Citibank cardholder agreement authorizing recovery of reasonable attorney fees, then Defendants would have had legal authority to include attorney fees in the state Complaint.  Resler v. Messerli & Kramer, P.A., No. Civ. 02-2510, 2003 WL 193498, at *5 (D. Minn. Jan. 23, 2003) (unpublished).  However, the Court has already determined that Kermit Erickson was not liable for the collection action attorney fees under the cardholder agreement.  Because no legal authority supports Defendants' attorney fees claim, their demand for payment of those fees constituted a violation of section 1692f(1).  Shula v. Lawent, 359 F.3d 489, 493 (7th Cir. 2004).  The Court grants summary judgment to Plaintiff on Count III.

In conclusion, the Court dismisses Count I and grants summary judgment for Plaintiff on liability on Counts II, III, and IV.  Only the issue of damages remains.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendants' Motion for Summary Judgment [Docket No. 9] is **GRANTED IN PART** and **DENIED IN PART** as follows:

a.      Defendants' Motion is **GRANTED** as to Count I, Violation of 15

21

U.S.C. § 1692g(b).

    b.    Defendants' Motion is **DENIED** as to Count II, Violation of 15 U.S.C. § 1692e.

    c.    Defendants' Motion is **DENIED** as to Count III, Violation 15 U.S.C. § 1692f(1).

    d.    Defendants' Motion is **DENIED** as to Count IV, Violation of 15 U.S.C. § 1692e(2)(A).

2.    Plaintiff's Motion for Summary Judgment and for Denial of Defendants' Motion for Summary Judgment [Docket No. 17] is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.    Plaintiff's Motion is **DENIED** as to Count I, Violation of 15 U.S.C. § 1692g(b).

    b.    Plaintiff's Motion is **GRANTED** as to Count II, Violation of 15 U.S.C. § 1692e.

    c.    Plaintiff's Motion is **GRANTED** as to Count III, Violation 15 U.S.C. § 1692f(1).

    d.    Plaintiff's Motion is **GRANTED** as to Count IV, Violation of 15 U.S.C. § 1692e(2)(A).

Dated: February 22, 2006                s / Michael J. Davis
                                            Judge Michael J. Davis
                                          United States District Court